UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| KISON ROBERTSON,<br><br>                    Movant,<br><br>        vs.<br><br>UNITED STATES OF AMERICA,<br><br>                    Respondent. | 5:21-CV-05063-KES<br><br>REPORT AND RECOMMENDATION |

**INTRODUCTION**

This matter is before the court on the *pro se* amended motion of Kison Robertson to vacate, correct, or set aside his sentence pursuant to 28 U.S.C. § 2255.  See Docket Nos. 1 & 23.[1]  Now pending is a motion by the United States ("government") to dismiss Mr. Robertson's motion without holding an evidentiary hearing.  See Docket No. 47.  This matter was referred to this magistrate judge for a recommended disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 57.11.

**FACTS**

In order to provide context for Mr. Robertson's 27 claims for relief, the court provides the following synopsis of the evidence from the trial in this matter as set forth by the Eighth Circuit in Mr. Robertson's direct appeal:

---

[1] Documents cited from this civil habeas file will be cited using the court's assigned docket number.  Documents from Mr. Robertson's underlying criminal case, United States v. Robertson, 5:17CR-50059-KES (D.S.D.), will be cited using the court's assigned docket number preceded by "CR."

> On March 30, 2017, Robertson, Urva Quick Bear, Sr., and Urva
> Quick Bear, Jr. entered into a physical altercation at Evergreen
> Housing in Porcupine, South Dakota. The altercation ended, and
> Robertson left the scene in his vehicle while the Quick Bears
> remained. Robertson admitted he then drove back to the scene
> within a matter of minutes. Multiple witnesses testified that
> Robertson returned with a gun and fired two shots, one in the
> direction of Quick Bear, Jr. and one in the direction of Quick Bear,
> Sr., hitting Quick Bear, Sr. in the abdomen. Robertson admitted
> that he fired the shotes but asserted he only intended to scare the
> Quick Bears away and protect himself.
>
> A grand jury indicted Robertson. The jury convicted him of one
> count each of assault with a dangerous weapon, assault resulting
> in serious bodily injury, and discharge of a firearm during the
> commission of a crime of violence.

United States v. Robertson, 948 F.3d 912, 915-16 (8th Cir. 2020).

At sentencing, the district court calculated Mr. Robertson's total offense

level under the United States Sentencing Guidelines ("USSG") to be a 24, which

included a seven-level increase because Mr. Robertson inflicted a serious or

permanent bodily injury. Id. at 916. With a criminal history category of IV and

a total offense level of 24, Mr. Robertson's USSG sentencing range was 77 to 96

months' imprisonment for the assault offenses plus a mandatory minimum

sentence of 10 years for the firearms offense, which was required to be served

consecutively. Id. The court imposed a sentence of 77 months—the bottom of

the USSG range—for both of the assault offenses, each sentence to run

concurrently. Id. A sentence of 10 years was imposed for the firearms offense

to run consecutive to the other sentences. Id.

Attorney Dana Hanna was appointed to represent Mr. Robertson

approximately two months after his initial appearance in this court. CR Docket

No. 40.[2]  After Mr. Robertson was convicted at his jury trial, attorney Stephen Demik was appointed to represent him post-trial through sentencing and his direct appeal.[3]  CR Docket No. 146.

The Eighth Circuit affirmed Mr. Robertson's sentence and conviction, but reversed as to the imposition of a term of supervised release having to do with the consumption of alcohol.  Robertson, 948 F.3d at 921.  Following the Eighth Circuit's decision, Mr.Robertson filed a petition for a writ of certiorari before the Supeme Court.  That petition was denied on October 5, 2020.  Robertson v. United States, ___ U.S. ___, 141 S. Ct. 298 (2020).

Mr. Robertson timely filed this § 2255 motion and followed with an amended motion.  Docket Nos. 1 & 23.  In his amended § 2255 motion he raises 27 separate claims for habeas relief.  Docket No. 23 at pp. 5-44. Because they are so numerous, rather than set forth the claims here, the court will set them forth as each is discussed below.

## DISCUSSION

### A.    Scope of a § 2255 Motion

Section 2255 of Title 28 of the United States Code was enacted to supersede habeas corpus practice for federal prisoners.  Davis v. United States,

---

[2] Assistant Federal Public Defender Jennifer Albertson represented Mr. Robertson between March 31, 2017 and Mr. Hanna's appointment, but Mr. Robertson has not alleged any ineffective assistance of counsel claims against Ms. Albertson.

[3] Attorney Timothy Rensch was appointed to represent Mr. Robertson immediately after trial, but was replaced by Mr. Demik prior to the sentencing hearing.  Mr. Robertson has not alleged any ineffective assistance of counsel claims against Mr. Rensch.

417 U.S. 333, 343-44 (1974).  Section "2255 was intended to afford federal prisoners a remedy identical in scope to federal habeas corpus."  Id. at 343. Prior to the enactment of § 2255, habeas claims had to be brought in the district where the prisoner was confined, resulting in overburdening those districts where federal correctional institutions were located and presenting logistical issues because the record in the underlying criminal case was often in a distant location.  United States v. Hayman, 342 U.S. 205, 212-16 (1952). The enactment of § 2255 resolved these issues by requiring that the motion be filed in the sentencing court.  Id.

The scope of a § 2255 motion is seemingly broader than the scope of a habeas petition, the latter of which is typically limited to allegations of a constitutional dimension.  Section 2255 allows a federal prisoner to "vacate, set aside or correct" a federal sentence "upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack."  See 28 U.S.C. § 2255(a).  Where the allegation for relief is *not* based on a violation of a Constitutional or federal statutory right or an assertion that the court was without jurisdiction, the Supreme Court has read a "fundamentality" requirement into § 2255—relief is available for only those errors which constitute a "fundamental defect which inherently results in a complete miscarriage of justice" or "an omission inconsistent with the rudimentary demands of fair procedure."  Hill v. United States, 368 U.S. 424,

428 (1962); see Peguero v. United States, 526 U.S. 23, 27-30 (1999) (noting collateral relief may be appropriate when a movant is prejudiced by a court's error).

Generally, petitioners are precluded from asserting claims pursuant to § 2255 that they failed to raise on direct appeal. United States v. Frady, 456 U.S. 152, 158-59,167-68 (1982); United State v. Darden, 915 F.3d 579, 586 (8th Cir. 2019) (finding proper standard for reviewing claims not raised on direct appeal is cause and prejudice). When a § 2255 petitioner asserts a claim that is procedurally defaulted because it was not raised on direct appeal, the claim can only proceed after the petitioner has shown either: (1) actual innocence or (2) that the procedural default should be excused because there was both cause for the default and actual prejudice to the petitioner. Bousley v. United States, 523 U.S. 614, 621-22 (1998); McNeal v. United States, 249 F.3d 747, 749 (8th Cir. 2001). Therefore, barring a claim of actual innocence, a petitioner must show both cause for why he failed to raise an issue on direct appeal as well as actual prejudice caused by the alleged errors. If a movant fails to demonstrate prejudice, the court need not address whether cause exists to excuse a procedural default. Moore-El v. Luebbers, 446 F.3d 890, 898 (8th Cir. 2006).

Appellate courts generally refuse to review claims of ineffective assistance of counsel on direct appeal; such claims are, therefore, properly addressed in a 28 U.S.C. § 2255 motion such as the one here. See United States v. Campbell, 6 F.4th 764, 775-76 (8th Cir. 2014); United States v. Lee, 374 F.3d 637, 654

5

(8th Cir. 2004) ("[I]neffective assistance of counsel [claims] are generally not cognizable on direct appeal" and "may be heard only if a miscarriage of justice would otherwise result . . . or if the district court has developed a record on the issues."). Therefore, no procedural default analysis is required before examining petitioner's claims of constitutionally-deficient counsel.

**B.    Claims Which are Procedurally Defaulted**

Mr. Robertson asserts claims in claims 1, 2, 8, 12, 13, 17, 19, 24, 25, and 26 that he could have raised or did actually raise in his direct appeal. These claims assert that the government withheld evidence (claims 1, 2, 8 and 24), that there was prosecutorial misconduct (claim 12), sentencing errors (claim 13), jury instruction errors (claim 17), errors in evidentiary rulings (claims 19 & 26), and that his sentencing statute was unconstitutional (claim 25).

The jury instruction error (claim 17) was raised on appeal, as was the admission of the marijuana evidence (claim 19). Robertson, 948 F.3d at 918-19. Mr. Robertson is not permitted to relitigate those issues in this § 2255 action. Sun Bear v. United States, 644 F.3d 700, 702 (8th Cir. 2011) (en banc). Therefore, this court recommends claims 17 and 19 be dismissed.

The other claims could have been raised in Mr. Robertson's direct appeal, but were not. Those claims are procedurally defaulted. Frady, 456 U.S. at 158-59,167-68; Darden, 915 F.3d at 586.   Accordingly, before this court can address the merits of those claims, Mr. Robertson must show either cause for the default and actual prejudice or that he is actually innocent. Bousley, 523

U.S. at 621-22; <u>McNeal</u>, 249 F.3d at 749.  Because Mr. Robertson did not respond in any way to the government's motion to dismiss, he failed to carry his burden to demonstrate cause and prejudice or actual innocence.  Accordingly the court recommends claims 1, 2, 8, 12, 13, 24, 25, and 26 be dismissed with prejudice.

## C.    Ineffective Assistance of Counsel Claims

### 1.    Standard Applicable to Ineffective Assistance Claims

The remaining claims in Mr. Robertson's § 2255 motion assert that his trial counsel or appellate counsel was ineffective.  The Sixth Amendment of the Constitution of the United States affords a criminal defendant with the right to assistance of counsel.  U.S. Const. amend. VI.  The Supreme Court "has recognized that 'the right to counsel is the right to the effective assistance of counsel.'" <u>Strickland v. Washington</u>, 466 U.S. 668, 686 (1984) (quoting <u>McMann v. Richardson</u>, 397 U.S. 759, 771 n.14 (1970)).  <u>Strickland</u> is the benchmark case for determining if "counsel's assistance was so defective as to" violate a criminal defendant's Sixth Amendment rights and "require reversal of a conviction." <u>Id.</u> at 687.

"When a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness." <u>Id.</u> at 687-88.  The defendant must also show that counsel's unreasonable errors or deficiencies prejudiced the defense and affected the judgment. <u>Id.</u> at 691-92.  The defendant must show "there is a reasonable probability that, absent the errors,

the factfinder would have had a reasonable doubt respecting guilt." Id. at 695.

In sum, a defendant must satisfy the following two-prong test. Id. at 687.

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

Id.

"There is a presumption that any challenged action was sound trial strategy and that counsel rendered adequate assistance and made all significant decisions in the exercise of professional judgment." Hall v. Luebbers, 296 F.3d 685, 692 (8th Cir. 2002) (quotation omitted). It is the petitioner's burden to overcome this presumption, and a "petitioner cannot build a showing of prejudice on a series of errors, none of which would by itself meet the prejudice test." Id. (citing Wainwright v. Lockhart, 80 F.3d 1226, 1233 (8th Cir. 1996)). Courts may address deficient performance and prejudice in any order, and courts need not "address both components . . . if the defendant makes an insufficient showing on one." Strickland, 466 U.S. at 697.

Counsel's conduct must be judged by the standards for legal representation which existed at the time of the representation, not by standards promulgated after the representation. Bobby v. Van Hook, 558 U.S. 4, 7-9 (2009). " 'American Bar Association standards and the like' are 'only

guides' to what reasonableness [of counsel's conduct] means, not its definition." Id. (quoting Strickland, 466 U.S. at 688).

The Supreme Court distinguishes between those cases "in which the new evidence 'would barely have altered the sentencing profile presented to the sentencing judge,'" and those that would have had a reasonable probability of changing the result. Porter v. McCollum, 558 U.S. 30, 41 (2009) (quoting Strickland, 466 U.S. at 700). In assessing the prejudice prong, it is important for courts to consider "the totality of the available mitigation evidence—both that adduced at trial, and the evidence adduced in the habeas proceeding—and reweigh it against the evidence in aggravation." Id. at 41 (internal quotation omitted, cleaned up). It is not necessary for the movant to show "that counsel's deficient conduct more likely than not altered the outcome" of his case, only that there is "a probability sufficient to undermine confidence in [that] outcome." Id. at 44 (quotation omitted). "Judicial scrutiny of counsel's performance must be highly deferential" with "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689.

### 2.     Ground 3

In ground 3, Mr. Robertson argues his counsel rendered ineffective assistance of counsel when the prosecutor gave the wrong legal definition for serious bodily injury in closing arguments and Mr. Hanna failed to object. Docket No. 23 at p. 8. The prosecutor stated in pertinent part the following:

> Count IV is assault resulting in serious bodily injury. We've talked up above here, just a little earlier, about the assault. You've seen

9

that definition, "an attempt or threat to do injury to the person of
another." All right? So it's an intentional act. It's when you lower
that firearm and you aim and you do all the different things related
to that.

The second part is that the assault resulted in serious bodily
injury to Urva Quick Bear Sr. It doesn't mean—it doesn't tell you
anywhere in this definition that you have to find that he intended
to do the serious bodily injury. He just had to intend the assault
and that it resulted in serious bodily injury. So the difference here
is that serious bodily injury, that element.

The definition right below it talks about what serious bodily injury
is. It's a substantial risk of death. It's extreme physical pain,
protracted and obvious disfigurement, or protracted loss or
impairment of the function of a bodily member or organ.

What we're talking about here is Nos. 2 and 3. Okay? The
assault—I suppose technically the assault—you could say it
involved a serious risk of death, substantial risk of death. But
what we're talking about is the injuries here. Okay? So I'm talking
about extreme physical pain.

CR Docket No. 155-2 at p. 137, lines 4-25; p. 138, lines 1-2 (Jury Trial

Transcript ("JTT") Vol. III at pp. 528-29).

The above-referenced passage to which Mr. Robertson refers was a

discussion by the prosecutor of the court's jury instruction number five, which

stated the following in pertinent part:

For you to find Kison Robertson guilty of assault with a dangerous
weapon, as charged in Count 4 of the Superseding Indictment, the
prosecution must prove the following essential elements beyond a
reasonable doubt:

**_One_, that on or about March 30, 2017, Kison Robertson
assaulted Urva Quick Bear, Sr.;**

An "assault" is any intentional and voluntary attempt or threat to
do injury to the person of another, when coupled with the apparent
present ability to do so sufficient to put the person against whom
the attempt is made in fear of immediate bodily harm.

10

> ***Two***, **that the assault resulted in serious bodily injury to Urva Quick Bear, Sr.;**
>
> "Serious bodily injury" means injury that involves:
> > (1)    a substantial risk of death;
> > (2)    extreme physical pain;
> > (3)    protracted and obvious disfigurement; or
> > (4)    protracted loss or impairment of the function of a bodily member, organ, or mental faculty.

CR Docket No. 110 at p. 9.

Any objection by defense counsel to the above argument by the prosecutor, which in turn was based on the court's instruction number five, would have been unavailing as the statement was an accurate statement of the law. The Eighth Circuit has stated that "the injuries gunshots inflicted meet the standard of serious bodily injury." United States v. Two Eagle, 318 F.3d 785, 791 (8th Cir. 2003). " 'Serious bodily injury' means something more than slight bodily injury, but not necessarily life threatening injury. It does not require a high probability of death." Id. A gunshot wound causing scarring at both the entry and exit points which produced severe pain met the definition of "serious bodily injury." Id. The court finds no deficient representation on counsel's part for failing to object to a correct statement of the law by the prosecutor in closing argument.

### 3.    Ground 4

In ground 4 Mr. Robertson alleges trial counsel was ineffective for failing to have a ballistics expert testify and failing to have an independent forensic doctor examine the victim's wounds. Docket No. 23 at p. 8. Mr. Robertson claims a ballistics expert would have testified the prosecution had misidentified

11

the entry and exit wounds on the victim and that, in fact, the wound identified as the entry point was really the exit point and vice versa. Id. Mr. Robertson says this would have proved that the bullet ricocheted, and thus, that Mr. Robertson had not aimed his gun at the victim. Id. Mr. Robertson does not explain what he thinks a forensic doctor would have testified to other than that such testimony would have supported his ricochet theory. Id. at pp. 8, 10.

Mr. Robertson's trial counsel *did* consult with a ballistics expert. Docket No. 37 at pp. 1-2. The expert told Mr. Hanna he could not give a reliable opinion as to which of the victim's wounds was an entry wound and which was an exit wound. Id. at p. 2. Counsel did not call this expert at trial because the expert was unable to render any testimony that would support the defense theory of the case. Id.

As to the forensic doctor, counsel noted that he was not appointed to represent Mr. Robertson until long after the events in the indictment took place. Id. By that time, the victim's wounds were healed and the victim had been discharged from medical care. Id. Counsel did not believe that testimony from such an expert would in any way contradict the government's expert's testimony. Id.

Finally, counsel noted it was his theory of the facts that the victim's injury was sustained when the bullet from Mr. Robertson's firearm struck a metal surface a short distance away from the victim and ricocheted. Id. However, counsel noted the metal surface from which the bullet ricocheted was only a few feet from the victim, so proving that the ricochet occurred would not,

12

in itself, have proved that Mr. Robertson did not intend to fire the gun at the victim. Id. at pp. 2-3.

A habeas petitioner asserting counsel was ineffective for failing to call an expert must point to specific expert testimony or opinions which would have been rendered and had the potential to change the outcome of his trial. See Ashker v. Class, 152 F.3d 863, 876 (8th Cir. 1998) (finding no prejudice where defendant "made no showing that the relevant tests by an expert witness would have exculpated him"); Ellefson v. Hopkins, 5 F.3d 1149, 1150-51 (8th Cir. 1993) (per curiam) (trial counsel's strategy to forego calling expert and rely on cross-examination of prosecution expert deemed not ineffective assistance of counsel). See also Wildman v. Johnson, 261 F.3d 832, 839 (9th Cir. 2001) (petitioner failed to show ineffective assistance because he did not demonstrate how his case was prejudiced by not retaining an expert; "[petitioner] offered no evidence that an . . .expert would have testified on his behalf at trial. He merely speculates that such an expert could be found. Such speculation, however, is insufficient to establish prejudice . . . speculating as to what [an] expert would say is not enough to establish prejudice.") (citation omitted).

Here, Mr. Robertson fails to identify specific experts and fails to substantiate what their testimony would have been. His assertions are mere speculation. Meanwhile, counsel's affidavit is based on an actual consultation with a ballistics expert and that expert's statement that he could not give an opinion to support the defense ricochet theory.

The court also notes that Mr. Hanna was appointed by the court to represent Mr. Robertson on May 15, 2017. CR Docket No. 40. The assault occurred two months previous on March 30, 2017. CR Docket No. 1-1 at p. 2. Mr. Robertson does not address counsel's assertion that the victim's wounds had healed and he had been discharged from medical care by the time counsel was appointed.

The government points out that trial counsel did present information and evidence to the jury that the bullet that struck the victim was a product of a ricochet and argued that this fact proved Mr. Robertson had not pointed the firearm at the victim. Docket No. 48 at p. 15 (citing TT at 31, 72, 75, 328, 344, 433, 537-41). Counsel pursued this line of argument and evidence in opening statement, through the victim's own testimony, through several witnesses' testimony, and in closing argument. Id. Furthermore, the government asserts that proof that the bullet ricocheted was ultimately irrelevant because—as a matter of law—that fact did not negate the assault. Mr. Robertson admitted in his own testimony that he fired the gun while pointing the gun toward or at the victim. Docket No. 48 at pp. 15-16.

Mr. Robertson has failed to carry his burden under Strickland to show deficient performance by counsel or prejudice as to his claim as to either expert. Accordingly, the court recommends claim 4 be dismissed.

### 4.    Ground 5

Mr. Robertson alleges his trial counsel was ineffective because he failed to introduce into evidence at trial photos of Mr. Robertson's injuries. Docket

No. 23 at p. 11.  Mr. Robertson alleges these photos would have shown that he sustained substantial injuries at the hands of the Quick Bears in the time prior to the assault with which he was charged and would have supported his self-defense theory.  Id.

Trial counsel submitted an affidavit indicating he did examine the photographs of Mr. Robertson's injuries and found them to have been minor. Docket No. 37 at p. 3.  Counsel notes that Mr. Robertson did not need hospitalization for his injuries and Mr. Robertson did not seek medical care as a result of the injuries.  Id.  Counsel states the photos showed some bruising and redness to Mr. Robertson's eye area and that the injuries were superficial. Id.  Counsel stated he did not introduce the photos into evidence because they would have undermined rather than supported Mr. Robertson's claim that he was a victim of a savage gang attack that made him fear for his life.  Id.  The photos would have proven, according to counsel, the fact that Mr. Robertson's use of deadly force was unjustified under the law.[4]  Id.

Counsel's decision not to introduce the photos falls squarely within permitted strategic decision-making allowable and given deference under Strickland.  Strickland, 466 U.S. at 689; Hall, 296 F.3d at 692.  Furthermore, that trial strategy was based on adequate investigation—counsel examined the photos and considered the lack of evidence of any necessary medical care given to Mr. Robertson before deciding not to introduce the photos at trial.

---

[4] The court has examined the photographs at Docket No. 23-1, pp. 6-15 and they reasonably support counsel's assessment and strategy.

Accordingly, the court finds counsel's decision not to introduce the photos constitutes effective assistance of counsel.  Furthermore, Mr. Robertson makes no attempt to show prejudice—that there was a potential that the result of the trial might have been altered if the photos had been seen by the jury.  The court recommends dismissing count 5 of Mr. Robertson's amended § 2255 motion.

### 5.    Ground 6

Mr. Robertson alleges counsel was ineffective because he did not adequately investigate prior to trial to support the defense theory that the victim was hit by a bullet that ricocheted.  Docket No. 23 at pp. 12-13. Mr. Robertson asserts that such information would have shown that Mr. Robertson did not intent to shoot the victim.  Id.

But, as discussed above in connection with claim 4, counsel presented the theory of the bullet ricochet at trial through opening statement, examination of several witnesses, and in closing argument.  Through counsel's efforts, the jury heard testimony from several witnesses that the bullet did indeed ricochet.  Mr. Robertson does not state what additional evidence counsel would have discovered if he had expended additional time or effort investigating pretrial.  In addition, as with claim 4, the evidence that the bullet ricocheted did not provide a defense as a matter of law to the charge of assault where Mr. Robertson himself admitted firing the weapon and discharging the bullet.

16

An assault occurs when "any intentional and voluntary attempt or threat to do injury to the person of another, when coupled with the apparent present ability to do so sufficient to put the person against whom the attempt is made in fear of immediate bodily harm."  CR Docket No. 110 at p. 9.  Here, Mr. Robertson performed the intentional and voluntary act of pulling the trigger and discharging the firearm.  That was an assault, even if the bullet never touched the victim because it put the victim "in fear of bodily harm" and Mr. Robertson had the "apparent present ability to" harm the victim.  Id.  Thus, even if additional evidence of ricochet existed and could have been uncovered by counsel with additional investigation, such evidence was legally unavailing to Mr. Robertson.  Mr. Robertson cannot prove the alleged error caused him prejudice.  The court recommends dismissing claim 6.

### 6.    Grounds 7 and 10

Mr. Robertson alleges his trial counsel was ineffective when he failed to remove juror #34 during jury selection.  Docket No. 23 at pp. 14, 20.  Mr. Robertson alleges juror #34 was a Native American person from the Pine Ridge Reservation, the same place the victim resided, and that the juror falsely stated he did not know any of the witnesses who were going to testify.  Id.  Mr. Robertson asserts that, in fact, juror #34 knew the witness Troy Ferguson.  Id.  Mr. Robertson also asserts that during the trial, another witness, Tribal Officer Tyler Little Finger, waived at juror #34 after Little Finger was done testifying and was leaving the

courtroom.  Id.  Mr. Robertson asserts trial counsel should have objected to this.  Id.

In his affidavit, attorney Hanna notes that Mr. Robertson's recitation of the facts is not quite accurate.  Docket No. 37 at pp. 3-4.  It was Mr. Hanna who noticed tribal Officer Little Finger make a "waving-type" gesture to the jury as he was leaving the courtroom.  Id.  Mr. Hanna called the matter to the court's attention.  Id.  The court held a hearing outside the presence of the jury and questioned the officer.  Id.  Officer Little Finger stated he did not know anyone on the jury and it was "just a rather nervous gesture not directed toward any particular person."  Id. at p. 4.  Mr. Hanna found the officer's testimony to be credible on this point and, after the court had made inquiry, saw no basis to ask to have any juror excused.  Id.

The facts set forth in Mr. Hanna's affidavit are confirmed by the trial transcript.  The court called Officer Little Finger back to the courtroom outside the presence of the jury.  CR Docket No. 155-1 at p. 272 (JT Vol. II at p. 379).  Officer Little Finger testified he was "just . . . being polite and saying hello like I always to everybody."  Id. at p. 273 (JT Vol. II. at p. 380).  The court asked if he was greeting the "jury as a whole," and Officer Little Finger said "yeah."  Id.  The court asked if he recognized anyone on the jury and he said he did not.  Id.

Mr. Hanna states he had no grounds to want to have juror #34 stricken from the jury pool, and certainly no reason to strike that juror

18

on account of their race or place of residence.  Docket No. 37 at p. 5.

Mr. Hanna asserts tht striking Native Americans from Pine Ridge simply

because they *are* Native Americans from Pine Ridge would risk causing a

Batson[5] violation.  Id.

The court read to the prospective jury pool a list of witnesses

expected to testify at trial, including Troy Ferguson and Tyler Little

Finger.  CR Docket No. 139 at p. 19 (Voir Dire Transcript ("VDT")).  The

court then asked if any of the potential jurors knew any of the witnesses

listed.  Id.

Juror #34 told the court they knew Troy Ferguson through the

racetrack.  Id. at pp. 22-23.  Despite knowing Ferguson, Juror #34 told

the court if Ferguson testified, the juror could judge his credibility just

like other witnesses.  Id. at p. 23.  Juror #34 told the court that despite

knowing Ferguson, it would not be hard for the juror to exercise

independent judgment as to whether Ferguson was telling the truth or

not.  Id.

In fact, Troy Ferguson was never called to testify by either the

prosecution or the defense.  See CR Docket No. 155 at pp. 3-4 (JT Vol. I

at pp. 3-4, index to testimony of witnesses called at trial).  So if there was

potential bias on the part of juror #34 as concerns witness Troy

Ferguson, that bias would not have infected Mr. Robertson's trial

---

[5] Batson v. Kentucky, 476 U.S. 79 (1986).  The Court held in Batson that a
prosecutor's use of peremtory challenges to jurors based on race violated the
Equal Protection clause of the Fourteenth Amendment.

because Ferguson never testified.  Accordingly, Mr. Robertson cannot show prejudice.  No juror stated that they knew Officer Little Finger.

The court finds Mr. Robertson has failed to carry his burden to show deficient performance by counsel and prejudice as required by Strickland.  Accordingly, the court recommends dismissal of claims 7 and 10.

### 7.    Ground 9

Mr. Robertson asserts in claim 9 that counsel was ineffective in failing to be prepared to present a self-defense defense at trial.  Docket No. 23 at p. 17.  Mr. Robertson asserts that Mr. Hanna hired an investigator, Robert Dawson, who interviewed the victim and audio recorded the interview but, due to tardy presentation of the evidence to the prosecution, the audio recording was not played for the jury.  Id.

Under claim 9 Mr. Robertson appears to also assert a more general claim of unpreparedness, alleging that his trial counsel confused names and the court had to correct him, that he failed to timely file motions to suppress and *in limine*, and that he failed to conduct an effective redirect examination of Mr. Robertson after he testified on cross-examination.  Id. at p. 18.

Mr. Hanna in his affidavit states that his theory of defense was self-defense.  Docket No. 37 at p. 4.  He argued and introduced evidence to show that the victim had attacked Mr. Robertson shortly before and that Mr. Robertson fired the gun in the general direction of the victim

20

having the reasonable belief that firing the gun was necessary to prevent the victim and his family from attacking Mr. Robertson again. Id. at pp. 4-5. Mr. Hanna notes that although he pursued the self-defense theory, the jury did not accept that theory. Id. at p. 5. Mr. Hanna professes to be at a loss to understand what recording Mr. Robertson is referring to. Id.

Prior to trial, Mr. Hanna had hired Robert Dawson as a private investigator to assist him in his representation of Mr. Robertson. CR Docket No. 155-2 at pp. 44-45 (JT Vol. III at pp. 495-96). Mr. Dawson testified at trial that he interviewed the victim on November 26, 2017. Id. at p. 45 (JT Vol. III at p. 496). Mr. Dawson testified that the victim said when Mr. Robertson returned to the scene (after the victim had assaulted Mr. Robertson), the victim stood up and yelled to him, saying "is that all you got?" while raising his fists up by his shoulders. Id. at pp. 46-47 (JT Vol. III at pp. 497-98). Although Mr. Dawson testified he had recorded the interview with the victim, that recording was not played for the jury because Mr. Hanna had not previously provided the recording to the prosecution. Id. at pp. 39-40 (JT Vol. III at pp. 490-91).

The court finds Mr. Robertson has failed to establish prejudice. As Mr. Hanna told the court, the audio segment he wished to play for the jury was only approximately 20 seconds long. Id. And Mr. Dawson testified he listened to the recording before testifying, so it was fresh in his mind, and he was allowed to testify to what the victim said in his

21

interview with Dawson.  Id. at pp. 46-47 (JT Vol. III at pp. 497-98).  The

playing of the audio recording, which was merely cumulative of what

Mr. Dawson testified to, does not hold out the prospect of potentially

changing the result of Mr. Robertson's trial.  As counsel stated:  the self-

defense theory was presented to the jury, the jury just did not accept

that theory.

As for Mr. Robertson's remaining allegations of counsel's

unpreparedness, there are too conclusory to merit relief.  He does not

specify what motions in limine should have been filed or how they would

have affected the outcome of his trial.  He does not specify what evidence

counsel should have sought to suppress and on what theory.[6]  He never

specifies how a successful suppression motion would have had the

potential to have changed the outcome of his case.  Finally, he never

specifies which names counsel needed the court's correction on and how

that affected the outcome of the case—or whether these corrections even

took place in the jury's hearing.

Vague, conclusory claims will not suffice for habeas relief.

Bryson v. United States, 268 F.3d 560, 562 (8th Cir. 2001) (vague and

conclusory habeas claims do not entitle a petitioner to relief); Spillers v.

Lockhart, 802 F.2d 1007, 1009-10 (8th Cir. 1986) (same);  Creek v.

---

[6] Mr. Hanna did raise a suppression motion in the midst of trial and the court
held a hearing on that motion, ultimately granting the motion as discussed
infra in this opinion.  If that is the suppression motion to which Mr. Robertson
is referring, he fails to demonstrate prejudice because the court heard
Mr. Hanna's tardy motion and granted it.

Weber, 598 F. Supp. 2d 1004, 120 (D.S.D. 2009) (quoting Beavers v.

Lockhart, 755 F.2d 657, 663 (8th Cir. 1995) (same).  Because

Mr. Robertson provides no details about these other claims, the court

cannot assess counsel's performance or whether prejudice occurred.

Because it is Mr. Robertson's burden to show both deficient

representation by counsel and prejudice, the court recommends

dismissing claim 9 because Mr. Robertson failed to carry his burden.

### 8.    **Ground 11**

Mr. Robertson alleges in ground 11 that his trial attorney was

ineffective for failing to suppress the evidence of where the shell casings

were found.  Docket No. 23 at p. 21.  Mr. Robertson asserts that the

victim and two others picked up the shell casings from the ground prior

to the arrival of police on the scene.  Id.  At trial, evidence was presented

as to the location of the shell casings not based on the police's first-hand

observations, but based on where the victim and these two witnesses

said they found the casings.  Id.  Mr. Robertson alleges this gave the jury

the wrong idea of how far away he was from the victim when he

discharged the firearm.  Id.

At the jury trial, the prosecution called Oglala Sioux Tribe Highway

Safety Trooper Juergen Kevin Rascher.  CR Docket No. 155-1 at p. 257

(JT Vol. II at p. 364).  He testified he had prepared a forensic map of the

crime scene showing where the fight took place and where the firearm

was later discharged.  Id. at p. 258-60 (JT Vol. II at p. 365-67).  Defense

23

counsel Hanna objected to the admission of the maps on the basis of hearsay. Id. at pp. 260, 262 (JT Vol. II at pp. 367, 369).

Counsel elicited testimony from Trooper Rascher that his map was based on what someone else said about where the shell casings were found. Id. at p. 262. Counsel elicited Trooper Rascher's admission that he did not find any shell casings at the scene. Id. The district court overruled counsel's hearsay objection and the forensic maps were admitted. Id. Therefore, the action Mr. Robertson claims counsel should have taken—the raising of an objection to keep the evidence out—*was* actually taken by counsel.

The government notes that the issue raised by Mr. Robertson implicates the chain of custody rule, which goes to the weight of the evidence rather than its admissibility. Docket No. 48 at p. 22 (quoting United States v. Briley, 319 F.3d 360, 363 (8th Cir. 2003)). Also, the government notes that the jury received evidence of the fact that the victim and witnesses picked up the casings and later provided them to police. Id. Thus, the jury had the relevant evidence before them regarding chain of custody and could decide how much weight to give to the evidence of the location of the shell casings. Id.

The purpose of the chain of custody rule is to ensure "that the custodians have preserved the integrity of such evidence." United States v. Brumfield, 686 F.3d 960, 965 (8th Cir. 2012). Therefore, unless there

is "a showing of bad faith, ill will, or proof that someone has tampered with the evidence," the physical evidence may be admitted. Id.

Here, there is no allegation by Mr. Robertson of bad faith, ill will, or proof of tampering. He admitted at trial to discharging the firearm and the casings were merely proof of that admitted fact. Given the state of the law, an attempt by counsel to exclude the evidence would likely not have succeeded—*and in fact did not succeed.* Furthermore, the admission of the evidence did nothing to undermine the theory of defense. The court finds no deficient performance by counsel. Counsel did attempt to exclude the evidence and the court rejected that attempt.

Furthermore, Mr. Robertson fails to demonstrate how he was prejudiced. He claims the jury was misled as to where Mr. Robertson was when he discharged his firearm, but as counsel noted, this did not impact his theory of self-defense. Docket No. 37 at p. 5. Because Mr. Robertson has failed to carry the twin burdens placed on him by Strickland, the court recommends dismissing claim 11.

### 9.    **Ground 14**

Mr. Robertson alleges in ground 14 that counsel was ineffective for failing to impeach Raven Tall. Docket No. 23 at p. 25. Mr. Robertson also alleges counsel was ineffective for failing to impeach other unidentified witnesses. Id. As to Tall, Mr. Robertson alleges when the FBI interviewed Tall, she stated Renita Yellow Boy struck Mr. Robertson

with a bar, while at trial Tall testified Renita did not strike

Mr. Robertson.  Id.

At trial during her direct examination Ms. Tall admitted the FBI report of her interview indicated she had said that Renita had something in her hand when she approached Mr. Robertson during the fight.  CR Docket No. 155-1 at pp. 168-69 (JT. Vol. II at pp. 275-76).  However, at trial, Ms. Tall testified that Renita did not have anything in her hand at the time.  Id.  When Ms. Tall spoke to the FBI, she testified just repeated what others had told her happened.  Id.  Ms. Tall stated at trial, however, that she was testifying to the truth about what she actually saw.  Id.  She testified none of the persons beating Mr. Robertson had any weapons—no guns, bars, pipes, or clubs.  Id. at p. 170 (JT Vol. II at p. 277).

On cross-examination, defense counsel established that Ms. Tall first spoke to the FBI only four or five days after the incident.  Id. at p. 179 (JT Vol. II at p. 286).  Counsel elicited testimony from Ms. Tall that she knew the man she was speaking to was an FBI agent and that it was very important to be accurate and truthful in what she told him.  Id. at pp. 179-80 (JT Vol. II at pp. 286-87).  Ms. Tall agreed the FBI agent asked her what she witnessed and she told him what she saw.  Id. at p. 180 (JT Vol. II at p. 287).  Counsel elicited Ms. Tall's testimony that she told the FBI agent she saw Renita Yellow Boy hit Mr. Robertson with a bar.  Id. at pp. 180-81 (JT Vol. II at pp. 287-88).  He extracted Ms. Tall's testimony that she did not tell the FBI agent she was relating hearsay, but rather that she was telling the agent what she herself

26

witnessed.  Id. at p. 181 (JT Vol. II at p. 288).  Furthermore, counsel established a motive on the part of Ms. Tall to change her testimony:  she had known Renita Yellow Boy for a long time, they were neighbors, and Ms. Tall liked Ms. Yellow Boy.  Id.  Ms. Tall admitted she did not want to get Renita in any trouble.  Id.  Counsel also got Ms. Tall to admit she had told the defense investigator that Renita used a pipe to strike Mr. Robertson during the fight. Id. at pp. 182-83 (JT Vol. II at pp. 289-90).

The court finds that counsel did exactly what Mr. Robertson alleges he should have done:  he effectively impeached Raven Tall.  The court finds no deficient performance nor any prejudice as a result of counsel's impeachment of Ms. Tall.  As to Mr. Robertson's vague claims about counsel's failure to impeach other unidentified witnesses, those claims are too vague to merit relief.  Bryson, 268 F.3d at 562; Spillers, 802 F.2d at 1009-10; Creek, 598 F. Supp. 2d at 120 (quoting Beavers, 755 F.2d at 663.  The court recommends dismissing ground 14 as Mr. Robertson has failed to show deficient performance or prejudice.

### 10.    Ground 15

Mr. Robertson alleges in ground 15 that counsel was ineffective because the jury was only instructed on self-defense at the beginning of the trial and counsel should have insisted that the self-defense instruction be read again before the jury retired to deliberate.  Docket No. 23 at p. 26.  This claim is factually without support.

27

The court instructed the jury on self-defense at the close of the case.  CR Docket No. 110 at pp. 3-10,  The written instructions were sent back into the jury room with the jury so they could make reference to the instructions during deliberations.  CR Docket No. 155-2 at pp. 124-25 (JT Vol. III at pp. 515-16).  This claim is without merit.  Mr. Robertson has failed to demonstrate either deficient performance by counsel or prejudice.  The court recommends dismissal of ground 15.

### 11.    Grounds 16 & 20

In ground 16 Mr. Robertson alleges counsel was ineffective for failing to suppress his statement to Officer Laddimer Clifford.  Docket No. 23 at p. 27.  Mr. Robertson asserted that Officer Clifford arrested Mr. Robertson and asked, "where is your gun," to which Mr. Robertson responded, "what gun?  I don't have no gun."  Id.  Again, Mr. Robertson's recitation of the facts is not supported by the record.

During the trial, defense counsel Hanna *did* move to suppress the statement made by Mr. Robertson to Officer Clifford on the grounds that Mr. Robertson was subject to custodial questioning at the time and had not yet been read his Miranda[7] rights.  CR Docket No. 155-2 at p. 2 (JT Vol. III at p. 393).  The district court then interrupted the trial and held a suppression hearing outside the presence of the jury.  Id. at pp. 2-12.  The court found that

---

[7] Miranda v. Arizona, 384 U.S. 436 (1966).  The Court in Miranda held that certain advisements must be made to a suspect before he may be subjected to custodial interrogation.  Id. at 444-45.

the statement had been elicited from Mr. Robertson after he was in custody and prior to <u>Miranda</u> warnings being given.  <u>Id.</u> at pp. 11-12 (JT Vol. III at p. 402-03).  The court accordingly granted Mr. Hanna's motion to suppress the statement.  <u>Id.</u>  Mr. Hanna did exactly what Mr. Robertson claims he should have done—and counsel was successful in so doing.

Mr. Robertson also claims in his § 2255 motion in both ground 16 and ground 20 that he asked for a lawyer when Officer Clifford arrested him. Docket No. 23 at pp. 27, 33.[8]  During cross-examination of Officer Clifford during the suppression hearing, Mr. Hanna inquired whether Mr. Robertson had requested an attorney during interrogation.  <u>Id.</u> at p. 7 (JT Vol. III at p. 398).  Officer Clifford denied that Mr. Robertson had made any such request in the course of his arrest.  <u>Id.</u>

Mr. Robertson testified in his own defense during the trial and he was asked about his conversation with Officer Clifford at the time of his arrest.  <u>Id.</u> at pp. 108-09 (JT Vol. III at pp. 499-500).  Mr. Robertson never testified that he told Officer Clifford he wanted to talk to a lawyer.  <u>Id.</u>  The court finds no factual basis for Mr. Robertson's *post hoc* allegation that he asked for a lawyer upon his arrest.

---

[8] Ground 20 also alleges attorney Hanna was ineffective for failing to obtain evidence from Officer Clifford's camera, which Officer Clifford testified was inoperable at the time because his camera cord inadvertently came unplugged as he exited his patrol car.  Docket No. 23 at p. 33.  Mr. Robertson asserts that a clamp should have been placed that would have prevented Officer Clifford's cord from coming unplugged.  <u>Id.</u>  How Mr. Hanna, who was not appointed until some months after Officer Clifford experienced the mishap with his camera, was supposed to travel backward in time to fix this problem and obtain the video, is a matter that the court finds perplexing to say the least.

As to the suppression of Mr. Robertson's statement before he was Mirandized, Mr. Hanna moved to suppress that statement and was fully successful in the motion.  Accordingly, the court finds defense counsel was not deficient nor was Mr. Robertson prejudiced.  The court recommends dismissing grounds 16 and 20 from Mr. Robertson's § 2255 motion.

### 12.    Ground 18

Mr. Robertson alleges in ground 18 that his appellate counsel, Stephen Demik, was ineffective because there were issues Mr. Robertson wanted to have raised in his direct appeal that Mr. Demik refused to raise.  Docket No. 23 at p. 30.  Specifically, Mr. Robertson argues Mr. Demik was ineffective for failing to raise these issues:  (1) the marijuana issue, (2) the mix-up of the gunshot exit and entry wounds, (3) the suppression hearing issue, (4) the shell casings being moved by the victim and witnesses, and (5) the seven-level enhancement he received under the USSG for the extent of the victim's injury.  Id.

Mr. Demik filed an affidavit herein in which he avers that he "exhaustively examined the record for appeal" and that he raised all "non-frivolous issues."  Docket No. 40 at p. 2.  Mr. Demik recalls that many of the issues Mr. Robertson requested him to raise on appeal were "habeas-type claims" that were inappropriate for direct appeal.  Id.  Mr. Demik states he explained this to Mr. Robertson contemporaneously in person, via email, and over the phone.  Id.

"The Sixth Amendment does not require that counsel raise every colorable or non-frivolous claim on appeal."  New v. United States 652 F.3d

949, 953 (8th Cir. 2011) (citing <u>Roe v. Delo</u>, 160 F.3d 416, 418 (8th Cir. 1998)).

"[A]bsent contrary evidence, we assume that appellate counsel's failure to raise

a claim was an exercise of sound appellate strategy." <u>Id.</u> (quoting <u>United States</u>

<u>v. Brown</u>, 528 F.3d 1030, 1033 (8th Cir. 2008)).  "Experienced advocates since

time beyond memory have emphasized the importance of winnowing out

weaker arguments on appeal." <u>Id.</u> at 954 (quoting <u>Brown</u>, 528 F.3d at 1033).

In <u>Roe</u>, appellate counsel failed to raise an issue on appeal as to an

admittedly erroneous jury instruction on first-degree murder.  <u>Roe</u>, 160 F.3d at

418.  The court held the reality of effective appellate advocacy is that weaker

issues must be screened out in order to focus attention on the strongest issues.

<u>Id.</u>  Therefore, even if an issue is "colorable" or "non-frivolous," counsel does

not act deficiently by failing to raise every possible argument.  <u>Id.</u>  A habeas

petitioner must overcome the presumption that counsel's failure to raise a

particular argument on appeal was not sound strategy.  <u>Id.</u>

Here, four of the five issues Mr. Robertson claims should have been

raised on appeal are discussed elsewhere in this opinion.  This court found

each of those issues unavailing.  Therefore, failure to raise the issues on direct

appeal was neither deficient performance by Mr. Demik nor was Mr. Robertson

prejudiced thereby.  Failure to raise a weak argument on appeal is not deficient

conduct by appellate counsel.  <u>New</u>, 652 F.3d at 954.

As to the seven-level increase under the USSG at Mr. Robertson's

sentencing hearing, Mr. Demik did object to that increase at the time of

sentencing.  CR Docket No. 167 at pp. 5-6 (Sentencing Hearing (SH)

transcript).  The court recalled the trial testimony of the victim and a physician that the victim had scars from where the bullet entered and exited and that those scars were permanent.  Id. at p. 7.  Under USSG § 2A2.2(b)(3)(C), the court held the USSG authorized adding seven points for a permanent bodily injury.  Id.  Therefore, on the basis of the victim's permanent scars, the court overruled counsel's objection and held the seven-level increase was appropriate.  Id.

Had Mr. Demik raised this issue on appeal, it likely would not have succeeded.  In United States v. Cree, 166 F.3d 1270, 1271-72 (8th Cir. 1999), the Eighth Circuit held that a four-level increase under under USSG § 2A3.1(b)(4)(A) was warranted based on the victim's sustaining a permanent scar as a result of a knife wound.  Accordingly, failure to raise the issue was not deficient performance and did not prejudice Mr. Robertson.  New, 652 F.3d at 954 (a lawyer is not ineffective for failing to raise weak claims on appeal).  The court recommends dismissing Mr. Robertson's claim 18.

### 13.  Ground 21

In ground 21, Mr. Robertson points out that his presentence investigative report (PSR) recited that Renita Yellow Boy struck him with a bar.  Docket No. 23 at p. 34.  See also CR Docket No. 157 at p. 4, ¶ 6.  The PSR recited that it obtained the facts set forth from reviewing discovery information and the interviews conducted by the FBI and the Oglala Sioux Tribe Department of Public Safety.  CR Docket No. 157 at p. 4, ¶ 5.  Mr. Robertson alleges Mr. Demik was ineffective for failing to point out at sentencing the discrepancy

between the facts recited in the PSR and the testimony of Raven Tall at trial in which she denied that Renita struck Mr. Robertson with a pipe. Docket No. 23 at p. 34.

This argument is nonsensical. The information in the PSR was *more favorable* to Mr. Robertson than the trial testimony. By setting forth the "fact" that Mr. Robertson had been assaulted with a bar by Renita Yellow Boy, the PSR provided evidence that tended to mitigate Mr. Robertson's actions in committing the subsequent assaults. Mr. Demik would have been doing Mr. Robertson a disservice had he objected to paragraph 6 in the PSR that contained facts which favored Mr. Robertson. The court finds Mr. Demik's actions in failing to object to paragraph 6 of the PSR at sentencing was neither deficient performance nor was Mr. Robertson prejudiced thereby.

Mr. Robertson also alleges Mr. Demik was ineffective for failing to raise this discrepancy in his direct appeal. Docket No. 23 at p. 34. However, credibility of the witnesses is an issue for the jury to determine and it would have been unlikely in the extreme for the Eighth Circuit to reverse Mr. Robertson's conviction based on a credibility issue. Again, failure to raise a weak issue on appeal is not ineffective representation. New, 652 F.3d at 954. The court recommends dismissal of ground 21.

### 14.   Ground 22

Mr. Robertson asserts in ground 22 that Mr. Demik was ineffective for failing to argue at sentencing that the PSR mixed up the locations of the victim's entry and exit wounds. Docket No. 23 at p. 35. Mr. Robertson alleges

Mr. Demik missed this issue which would have exonerated Mr. Robertson.  Id.
This issue was discussed in detail above in connection with ground 4.  The
issue, even if it could be proved, is neither a mitigating fact nor a defense to the
charge of assault resulting in serious bodily injury.  Mr. Demik was not
deficient for failing to argue this issue at sentencing nor was Mr. Robertson
prejudiced thereby.

### 15.    Ground 23

Ground 23 is styled as a violation of Mr. Robertson's Fifth Amendment
rights to due process, but in describing the ground, he alleges counsel Dana
Hanna was deficient in his representation.  Docket No. 23 at p. 37.  If this is a
stand-alone due process claim, it is procedurally defaulted because it could
have been raised on appeal and Mr. Robertson failed to do so.

If the claim is really premised on the Sixth Amendment's guarantee of
effective assistance of counsel, the court addresses it on the merits.
Mr. Robertson again alleges that trial counsel was deficient in failing to
establish through photos of the victim's wounds that the prosecution had the
identification of the wounds backwards:  what the government pointed to as
the exit wound was really the entry wound and vice versa.  Id.  Mr. Robertson
alleges had counsel established this mix-up, it would have definitively have
shown that the victim was hit by a bullet that ricocheted and Mr. Robertson
would have been exonerated.  Id.

The exit/entry wound issue was discussed at length in connection with
ground 4, above.  The court finds this issue unavailing.  Counsel did establish

through multiple witnesses that the bullet ricocheted. But this is not a legal defense to the crime of assault. The court recommends dismissing claim ground 23 for the same reasons discussed for the recommended dismissal of ground 4.

### 16.    Ground 27

Mr. Robertson's ground 27 is merely a cumulation of most of the prior claims of ineffective assistance of counsel on the part of attorney Hanna. Docket No. 23 at pp. 43-44. He alleges Hanna did not present evidence of the entry/exit wounds, failed to file motions on time, failed to call experts at trial, etc. Id. These issues were all discussed above and found not to merit relief under § 2255. The Eighth Circuit does not recognize as grounds for habeas relief the cumulation of all of a petitioner's claims where no single claim merits relief. Henderson v. Norris, 118 F.3d 1283, 1288 (8th Cir. 1997); Scott v. Jones, 915 F.2d 1188, 1191 (8th Cir. 1990). Accordingly, the court recommends dismissing ground 27 from Mr. Robertson's amended § 2255 motion.

### D.    No Evidentiary Hearing is Warranted

"While '[a] petitioner is entitled to an evidentiary hearing on a section 2255 motion unless the motion and the files and the records of the case conclusively show that [he] is entitled to no relief,' no hearing is required 'where the claim is inadequate on its face or if the record affirmatively refutes the factual assertions upon which it is based.' " New v. United States, 652 F.3d

949, 954 (8th Cir. 2011) (quoting <u>Anjulo-Lopez v. United States</u>, 541 F.3d 814, 817 (8th Cir. 2008)).

"A district court may deny an evidentiary hearing where (1) accepting the petitioner's allegations as true, the petitioner is not entitled to relief, or (2) 'the allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact.' " <u>Guzman-Ortiz v. United States</u>, 849 F.3d 708, 715 (8th Cir. 2017) (quoting <u>United States v.Sellner</u>, 773 F.3d 927, 929-30 (8th Cir. 2014)).  The Eighth Circuit held no evidentiary hearing was necessary because Guzman-Ortiz mischaracterized the record in his challenges to his lawyer's representation during closing argument and sentencing.  <u>Id.</u>  Therefore, "no further factual development of the record was necessary" before denying those claims.  <u>Id.</u>

No evidentiary hearing is warranted in Mr. Robertson's case.  His claims are either unavailing as a matter of law or they are unsupported by the record. Accordingly, this magistrate judge recommends no evidentiary hearing be held.

## CONCLUSION

Based on the foregoing facts, law, and analysis, this magistrate judge respectfully recommends granting in its entirety the government's motion to dismiss [Docket No. 47], and dismissing Mr. Robertson's original and amended § 2255 motions with prejudice.

## NOTICE TO PARTIES

The parties have fourteen (14) days after service of this report and recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1),

unless an extension of time for good cause is obtained.  Failure to file timely objections will result in the waiver of the right to appeal questions of fact. Objections must be timely and specific in order to require *de novo* review by the district court.  Thompson v. Nix, 897 F.2d 356 (8th Cir. 1990); Nash v. Black, 781 F.2d 665 (8th Cir. 1986).

DATED this 9th day of December, 2022.

BY THE COURT:

VERONICA L. DUFFY
United States Magistrate Judge