UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| KISON ROBERTSON,<br><br>                    Movant,<br><br>        vs.<br><br>UNITED STATES OF AMERICA,<br><br>                    Respondent. | **5:21-CV-05063-KES**<br><br>**ORDER ADOPTING REPORT AND RECOMMENDATION** |

Movant, Kison Robertson, filed a motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255 alleging a variety of grounds, most centering on the ineffectiveness of trial and appellate counsel. Docket 23. The United States moved to dismiss the motion. Dockets 47-48. Robertson did not respond to the government's motion to dismiss. On December 9, 2022, Magistrate Judge Veronica Duffy issued a report and recommendation advising the court to grant the government's motion to dismiss. Docket 49. On January 17, 2023, Robertson objected to the report and recommendation on a variety of grounds. Docket 55. The government did not object to the report and recommendation.

## BACKGROUND

### I.      Factual Background

On March 21, 2018, the jury returned a verdict finding Robertson guilty of one count of assault with a dangerous weapon, one count of assault resulting in serious bodily injury, and one count of discharge of a firearm

during the commission of a crime of violence in case 5:17-CR-50059. 17-CR-50059, Docket 114. Robertson was acquitted of the remaining counts. *Id.* The facts giving rise to the conviction were summarized by the Eighth Circuit as follows during Robertson's appeal:

> On March 30, 2017, Robertson, Urva Quick Bear, Sr., and Urva Quick Bear, Jr. entered into a physical altercation at Evergreen Housing in Porcupine, South Dakota. The altercation ended, and Robertson left the scene in his vehicle while the Quick Bears remained. Robertson admitted he then drove back to the scene within a matter of minutes. Multiple witnesses testified that Robertson returned with a gun and fired two shots, one in the direction of Quick Bear, Jr. and one in the direction of Quick Bear, Sr., hitting Quick Bear, Sr. in the abdomen. Robertson admitted that he fired the shots but asserted he only intended to scare the Quick Bears away and protect himself.

*United States v. Robertson*, 948 F.3d 912, 915 (8th Cir. 2020).

Robertson was sentenced on November 2, 2018. *See* 17-CR-50059, Docket 160. The presentence investigation report (PSR), prepared by probation for Robertson's sentencing, calculated his sentencing guideline range as 77 to 96 months based on a total offense level of 21. 17-CR-50059, Docket 157 at 6; *but see Robertson*, 948 F.3d at 916 (calculating offense level as 24). The court imposed a sentence at the bottom end of the guideline range of 77 months on each of the assault offenses, to run concurrently. *Robertson*, 948 F.3d at 916. The court also imposed 10-year sentence for the firearms offense, to run consecutive to the other sentences. *Id.*

Robertson was represented by Dana Hanna during the trial in this matter and by Stephen Demik post-trial during sentencing and his direct appeal. 17-CR-50059, Dockets 40, 146.

2

## II.    Procedural Background

Following his sentencing on November 2, 2018, Robertson filed a direct appeal with the Eighth Circuit. 17-CR-50059, Dockets 160, 164; *see Robertson*, 948 F.3d at 915. On January 23, 2020, the Eighth Circuit affirmed Robertson's conviction and sentence, but reversed a condition of his supervised release concerning the consumption of alcohol. *Robertson*, 948 F.3d at 921. Robertson then filed a petition for a writ of certiorari before the Supreme Court, which was denied on October 5, 2020. *Robertson v. United States*, ___ U.S. ___, 141 S.Ct. 298 (2020). On October 4, 2021, Robertson timely filed this § 2255 motion and followed with an amended motion. *See* Dockets 1, 23; *see also* 28 U.S.C. § 2255(f). The amended motion contains 27 separate claims for relief. Docket 23 at 5–44.

## STANDARD OF REVIEW

The court's review of a magistrate judge's report and recommendation is governed by 28 U.S.C. § 636 and Rule 72 of the Federal Rules of Civil Procedure. The court reviews de novo any objections to the magistrate judge's recommendations as to dispositive matters that are timely made and specific. 28 U.S.C. § 636(b)(1)(B); Fed. R. Civ. P. 72(b). In conducting its de novo review, this court may then "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C); *United States v. Craft*, 30 F.3d 1044, 1045 (8th Cir. 1994). Magistrate Judge Duffy provided a full, complete, and well-analyzed report and recommendation

addressing all the issues Robertson raised. The court adopts the recommendations and addresses the issues raised by Robertson's objections.

## DISCUSSION

### I.   Procedurally Defaulted and Previously Litigated Claims

Generally, if a claim can be raised on direct appeal, the defendant must raise it at that time or else the claim is procedurally defaulted. *See Jennings v. United States*, 696 F.3d 759, 762-63 (8th Cir. 2012) Once a claim is procedurally defaulted, it "may be raised in habeas only if the defendant can first demonstrate either cause and actual prejudice, or that he is actually innocent." *Id.* at 763 (quoting *Bousley v. United States*, 523 U.S. 614, 622 (1998)) (internal quotation marks omitted). But the rule of procedural default applies only to claims that may be raised on direct appeal. *See Massano v. United States*, 538 U.S. 500, 504 (2003). Claims that are not typically considered on by the appellate court, such as ineffective assistance of counsel claims, may proceed as matters of first impression under § 2255. *Id.* at 505, 509.

Of Robertson's 27 claims, Magistrate Judge Duffy recommends that eight of them (claims 1, 2, 8, 12, 13, 24, 25, and 26) be dismissed because the claims are procedurally defaulted. Docket 49 at 6-7. These claims, which concern governmental withholding of evidence (claims 1, 2, 8, and 24), prosecutorial misconduct (claim 12), sentencing errors (claim 13), evidentiary rulings (claim 26), and the constitutionality of the sentencing statute (claim 25), could have been raised on direct appeal but were not. *See* Docket 23;

4

*Robertson*, 948 F.3d at 915 ("Robertson challenges [on direct appeal] two of the district court's evidentiary rulings, its denial of a requested jury instruction, and its imposition of three supervised release conditions.") Thus, the claims are procedurally defaulted, and Robertson must demonstrate either actual innocence or cause and prejudice for them to be properly before the court. *See Jennings*, 696 F.3d at 763.

Robertson objects to the dismissal of claims 1, 2, 8, 12, 13, 24, 25, and 26, but he does not appear to claim either actual innocence or cause and prejudice to excuse the procedural default. *See* Docket 55 at 3-4. The only argument raised by Robertson is that he asked his attorney to raise the claims on direct appeal, but that his attorney declined and that it is "not [Robertson's] fault that his attorneys did not listen to his requests[.]" *Id.* at 4. The Supreme Court, however, has held that "default of a constitutional claim by counsel pursuant to a . . . tactical decision would, absent extraordinary circumstances, bind the habeas petitioner even if he had not personally waived that claim." *Murray v. Carrier*, 477 U.S. 478, 485 (1986). Robertson has not indicated any such extraordinary circumstances. *See* Docket 23. Further, even if cause existed in this case, Robertson has also failed to demonstrate prejudice. *Id.* Because the petitioner bears the burden of showing cause and prejudice in § 2255 cases, the court affirms Magistrate Judge Duffy's finding that claims 1, 2, 8, 12, 13, 24, 25, and 26 are procedurally defaulted. Thus, those claims are dismissed.

Magistrate Judge Duffy also recommends that the court dismiss claims 17 and 19 because the claims were already litigated on appeal and are barred from reconsideration by this court. Docket 49 at 6; *See also Robertson*, 948 F.3d at 918-19 (litigating claims). "With rare exceptions, § 2255 may not be used to relitigate matters decided on direct appeal." *Sun Bear v. United States*, 644 F.3d 700, 702 (8th Cir. 2011). Because Robertson does not explain why any such exception should apply here, claims 17 and 19 are dismissed because they were already litigated on appeal.

## II.    Ineffective Assistance of Counsel Claims

The remaining claims in Robertson's § 2255 motion – claims 3, 4, 5, 6, 7, 9, 10, 11, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, and 27 – concern the effectiveness of either trial or appellate counsel. *See* Docket 23 at 8-14, 17-22, 25-37, 48. The "Sixth Amendment guarantees a defendant the right to have counsel present at all critical stages of the criminal proceedings." *Missouri v. Frye*, 566 U.S. 134, 140 (2012) (quoting *Montejo v. Louisiana*, 556 U.S. 778, 786 (2009)) (internal quotation marks omitted). "Critical stages include arraignments, postindictment interrogations, postindictment lineups, and the entry of a guilty plea." *Id.* Additionally, "[a] criminal defendant has a constitutional right to counsel on the first direct appeal." *Ahumada v. United States*, 994 F.3d 958, 960 (8th Cir. 2021). "This 'encompasses the right to effective assistance of counsel.' " *Id.* (quoting *Douglas v. California*, 372 U.S. 353, 357-58 (1963)).

6

The Supreme Court articulated the test for determining if "counsel's assistance was so defective as to" violate the defendant's constitutional rights in the case *Strickland v. Washington*. 466 U.S. 668, 687 (1970). "First, the defendant must show that counsel's performance was deficient." *Id.* Deficient performance exists when "counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. The court's inquiry into the adequacy of representation is highly fact-specific, and "[j]udicial scrutiny of counsel's performance must be highly deferential." *Id.* at 688-89.

"Second, the defendant must show that the deficient performance prejudiced the defense." *Id.* at 687. This element requires the defendant to demonstrate that counsel's error or errors were so grave as to render the result of the trial unreliable, thus depriving the defendant of a fair trial. *Id.* "Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable." *Id.*

**A. Claim 3**

In claim 3, Robertson argues that his counsel was ineffective for failing to object during closing arguments when the prosecutor gave the wrong legal definition for serious bodily injury. Docket 23 at 8. Magistrate Judge Duffy disagreed with Robertson's argument because the prosecutor's statement of the law was accurate and, thus, "[a]ny objection by defense counsel . . . would have been unavailing[.]" Docket 49 at 11. In his objection to the report and recommendation, Robertson again asserts that the prosecutor's definition of

7

serious bodily injury was incorrect, though he does not explain how it was incorrect. Docket 55 at 5.

The prosecution, during closing arguments, defined serious bodily injury as follows: "It's a substantial risk of death. It's extreme physical pain, protracted and obvious disfigurement, or protracted loss or impairment of the function of a bodily member or organ." 17-CR-50059, Docket 155-2 at 137. Serious bodily injury is defined by statute as "(A) a substantial risk of death; (B) extreme physical pain; (C) protracted and obvious disfigurement; or (D) protracted loss or impairment of the function of a bodily member, organ or mental facility[.]" 18 U.S.C. § 1365(h)(3); 18 U.S.C. § 113(b)(2) (explaining the definition for serious bodily injury is found in 18 U.S.C. § 1365). Because the prosecutor's definition substantially accords with this definition, matching it nearly identically, the statement was not incorrect. Objecting would have been futile, and thus trial counsel was not deficient for failing to do so.

The court adopts Magistrate Judge Duffy's recommendation as to claim 3 and dismisses the claim with prejudice.

## B. Claim 4

Claim 4 asserts that Robertson's trial counsel was ineffective "when the attorney did not provide expert testimony from a ballistics expert and an independent forensic doctor to examine the wounds of Ursa Quick[ B]ear[,] Sr." Docket 23 at 8. Robertson believes a ballistics expert or forensic doctor would have testified that what the government asserted was the victim's exist wound was actually the entry wound. *Id.* Robertson claims that the proposed expert

8

testimony would have bolstered his defense because it would have supported his theory that the bullet ricocheted before hitting Quick Bear. *Id.* at 8, 10. In his objections, Robertson states that "[a] gun expert could have changed the jury's mind on guilt and intention[]" because "[a] ricochet is not an intentional act." Docket 55 at 6.

As an initial matter, the court notes that Robertson is mistaken to the extent he believes that proving the bullet ricocheted would necessarily exonerate him. *See id.* "[A]ssault, as it is used in 18 U.S.C. § 113, is more inclusive than under the common law and encompasses elements that would have fallen under traditional definitions of battery as well as assault." *United States v. Herron*, 539 F.3d 881, 886 (8th Cir. 2008) (quotation omitted). "[One] branch of assault is an act which is intended to, and reasonably does, cause the victim to *fear* immediate bodily harm[.]" *United States v. Olson*, 646 F.3d 569, 574 (8th Cir. 2011) (quoting *United States v. Lee*, 199 F.3d 16, 18 (1st Cir. 1999)) (emphasis in original). Thus, a warning shot fired in the proximity of the victim could constitute an assault, even if the perpetrator did not intend physical harm because the shot could reasonably "cause the victim to *fear* immediate bodily harm." *See id.* A ricochet, therefore, does not necessarily prove Robertson's innocence, and a reasonable attorney need not put on evidence of a theory that would not benefit his client.

But even if an attorney was required to present evidence of the ricochet theory, Dana Hanna, Robertson's trial attorney, "consult[ed] an expert to determine whether he would be able to give an opinion as to which wound was

9

an entry wound and which was an exit wound[.]" Docket 37 at 2. "The expert with whom [Hanna] consulted advised [counsel] that there was no way he could give [. . .] a reliable opinion on that question[]" and so Hanna decided to proceed without the testimony. *Id.* Robertson cannot point to any other specific expert that would have provided the testimony he desired. *See* Dockets 23, 55. Because the petitioner has "[t]he burden of rebutting th[e] presumption" that counsel's actions were not ineffective, "it should go without saying that the absence of evidence cannot overcome it." *Dunn v. Reeves* , 594 U.S. 731, 739 (2021) (cleaned up). Thus, Robertson's argument that expert testimony should have been presented, without any indication that such testimony exists, is not enough to demonstrate the ineffectiveness of trial counsel. *See also Wildman v. Johnson*, 261 F.3d 832, 839 (9th Cir. 2001) ("[Petitioner] merely speculates that such an expert could be found. Such speculation, however, is insufficient to establish prejudice.").

Similarly, though Robertson argues that a forensic doctor could have also testified to the entry and exit wound locations, he does not identify any such doctor. *See* Docket 23 at 8, 10. When Hanna was appointed, Quick Bear had already been "treated and released from medical care." Docket 37 at 2. Hanna did not believe that a defense-appointed expert would be able to provide a different opinion than the government-appointed expert, and the court defers to his trial strategy in the absence of a rebuttal by Robertson. *Id.*; *see also Strickland*, 466 U.S. at 699.

Because Robertson has demonstrated neither counsel's ineffectiveness nor resulting prejudice, the court adopts Magistrate Judge Duffy's report and recommendation as to claim 4. The claim is dismissed with prejudice.

### C. Claim 5

Robertson asserts in claim 5 that trial counsel, Hanna, was ineffective because he did not introduce photos of Robertson's injuries, which were allegedly sustained in the altercation with the Quick Bears. Docket 23 at 11. Robertson alleges that these photos would have supported his self-defense theory. *Id.* Hanna proports that he reviewed the photos and that the visible damage was "superficial." Docket 37 at 3. Hanna did not introduce the photos because they "would have undermined, instead of supported [Robertson's] claim of being a victim of a savage gang attack[.]" *Id.* As Magistrate Judge Duffy stated in her recommendation, "[c]ounsel's decision not to introduce the photos falls squarely within permitted strategic decision-making allowable and given deference under *Strickland.*" Docket 49 at 15. Having reviewed the photos, the court finds that they reasonably support counsel's assessment and strategy. Thus, claim 5 is dismissed.

### D. Claim 6

Robertson's sixth claim alleges that Hanna was ineffective because he did not conduct adequate pretrial investigation into the ricochet theory discussed in claim 4. Docket 23 at 12-13; *see also supra* at 9. The record demonstrates that Hanna presented this theory at trial. *See, e.g.,* 17-CR-50059, Docket 155-1 at 183, 237. Because, as discussed above, the ricochet theory would not have

changed the jury's verdict even if accepted, no prejudice resulted from Hanna's investigation or lack thereof.

### E. Claims 7 and 10

Claims 7 and 10 concern whether Hanna was ineffective for failing to remove juror #34 during jury selection. Docket 23 at 14, 20. Robertson's entire argument appears to center on the fact that juror #34 is Native American and an enrolled tribal member. *See id.*; Docket 55 at 7. Robertson speculates in his objections that Officer Tyler Little Finger, who testified for the government, and juror #34 must know each other because "they are from the same tribe." Docket 55 at 7. Robertson does not provide any evidence that Officer Little Finger and juror #34 know each other beyond their alleged shared tribal enrollment. *Id.*

Hanna states that he did not strike juror #34 because he "had no grounds" to justify the strike and "it would certainly be a *Batson* violation if I tried to strike every Indian from the Pine Ridge Reservation because they are Indians from the Pine Ridge Reservation." Docket 37 at 5. Further, when Officer Little Finger made a "waving-type gesture to the jury as he was walking out of the Courtroom[,]" Hanna "call[ed] the Court's attention to the fact" and verified that the officer did not know any of the jury members, but was merely making a "nervous gesture not directed toward any particular person." *Id.* at 3-4.

In *Batson v. Kentucky*, 476 U.S. 79, 98-99 (1986), the Supreme Court held that using peremptory strikes to eliminate jurors on the basis of race

violates the Equal Protection Clause of the Constitution. Though *Batson* concerned the prosecution's use of peremptory strikes, the Supreme Court clarified that the rule also applies to a criminal defendant's use of peremptory strikes. *See Flowers v. Mississippi*, 588 U.S. 301 (2019) ("*Batson* now applies . . . to a criminal defendant's peremptory strikes[.]"). Because striking juror #34 on the basis of race, as Robertson wanted, would violate the constitution, Hanna was not ineffective for proceeding with juror #34. *See Strickland*, 466 U.S. at 687. Further, when Hanna suspected that Officer Little Finger may know one of the jurors, he raised the issue to the court and clarified the issue with Little Finger. *See* Docket 37 at 3-4. Robertson does not propose any further actions that Hanna should have taken. The court affirms Magistrate Judge Duffy's finding that Hanna was not ineffective as regards juror #34 and dismisses claims 7 and 10.

## F. Claim 9

In claim 9, Robertson argues that his trial counsel was ineffective for failing to be prepared to present a self-defense argument at trial. Docket 23 at 17. In his objections, Robertson focuses on the fact that Hanna did not timely disclose to the prosecution a recorded interview of the victim, and so the interview could not be played to the jury. Docket 55 at 8. Robertson alleges that, during the interview, the victim, Ursa Quick Bear, Sr., said that he asked "Is that all you got?" to Robertson during their altercation. *Id.* Robertson argues that this statement bolsters his argument for self-defense. *Id.* Magistrate Judge Duffy recommends dismissing the claim because Robertson did not

demonstrate that the failure to play the tape to the jury prejudiced the outcome of his trial. Docket 49 at 22.

To establish prejudice, a habeas petitioner must show that the alleged error "worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Johnson v. United States*, 278 F.3d 839, 844 (8th Cir. 2002) (quoting *United States v. Frady*, 456 U.S. 152, 170 (1981)). The petitioner must also show that, absent the error, there is "a substantial likelihood" that the jury would have acquitted him of the relevant count. *Id.* Robertson has failed to demonstrate such a likelihood. Though Hanna was unable to play the tape at issue to the jury, he solicited the same testimony from the private investigator during trial. *See* 17-CR-50059, Docket 155-2 at 46-47. Robertson does not explain how hearing this evidence via audiotape, compared to live testimony, would so greatly influence the jury as to lead to a different outcome at trial. Thus, the court finds that prejudice has not been demonstrated, and Magistrate Judge Duffy's recommendation to dismiss claim 9 is accepted. *See* Docket 49 at 23.

### G. Claim 11

Robertson alleges in claim 11 that Hanna was ineffective for failing to suppress evidence of where the shell casings were found. Docket 23 at 21. Magistrate Judge Duffy recommends dismissing the claim, given that counsel attempted to suppress the evidence, but the argument was rejected by the trial court. Docket 49 at 25. In his objections, Robertson again argues that the "shell casings evidence should not have been heard by the jury[.]" Docket 55 at

14

8. But Robertson does not explain how his objections relate to what Hanna should have done to exclude the evidence. *See id.* Rather, Robertson's objection goes to his disagreement with the trial court's ruling, an issue that should have been addressed on direct appeal. *See Jennings v. United States*, 696 F.3d at 762-63. Because the petitioner bears the burden of demonstrating the ineffectiveness of counsel and because Robertson's objection does not dispute Hanna's representation, Robertson has failed to show deficient performance. *See Weaver v. Massachusetts*, 582 U.S. 286, 299 (2017) ("To obtain relief on the basis of ineffective assistance of counsel, the defendant as a general rule bears the burden . . . .). The court adopts Magistrate Judge Duffy's recommendation and dismisses claim 11.

## H. Claim 14

Robertson does not object to Magistrate Judge Duffy's recommendation to dismiss claim 14. Docket 55 at 8. Thus, this court adopts the recommendation and claim 14 is dismissed with prejudice.

## I. Claim 15

In claim 15, Robertson alleges that Hanna was ineffective for failing to read the self-defense instruction to the jury for a second time at the end of trial. Docket 23 at 26. Magistrate Judge Duffy recommends dismissing this claim because it is not supported by the record. Docket 49 at 28. The court read the instructions to the jury at the close of the case and included an instruction on self-defense. 17-CR-50059, Docket 155-2 at 125. Additionally, a written copy of the instructions was provided to the jury for their use during

15

deliberations. 17-CR-50059, Docket 110 at 3-10. Robertson objects to Magistrate Judge Duffy's finding, arguing that "[n]o one knows if a jury read the instructions when they [we]re deliberating[.]" Docket 55 at 8. But Robertson provides no reason to believe that the jury did not read the instructions. And because "[a] jury is presumed to follow its instructions[,]" this court finds no cognizable ground for relief on claim 15. *Weeks v. Angelone*, 528 U.S., 234 (2000). Magistrate Judge Duffy's recommendation is adopted and claim 15 is dismissed.

### J. Claims 16 and 20

Claim 16 concerns Robertson's argument that Hanna was ineffective for failing to suppress Robertson's statement to Officer Laddimer Clifford. *See* Docket 23 at 27. Though Robertson appears to argue that Hanna did not act to suppress the statements, Magistrate Judge Duffy dismissed Robertson's argument because the trial transcript shows that Hanna objected and the court held a suppression hearing. *See* Docket 49 at 28; *see also* 17-CR-50059, Docket 155-2 at 2. Additionally, in both claim 16 and claim 20, Robertson argues that he asked for a lawyer when he was arrested, but that he was not provided one and that any statement made after his arrest should be suppressed. *See* Docket 23 at 27, 33. Magistrate Judge Duffy also dismisses this argument, stating that there is "no factual basis for Mr. Robertson's *post hoc* allegation that he asked for a lawyer upon his arrest." Docket 49 at 29.

In his objections, Robertson does not make any specific refutation of Magistrate Judge Duffy's recommendation, but merely reiterates his original

argument. *See* Docket 55 at 9. Having reviewed the trial transcript, the court affirms Magistrate Judge Duffy's recommendation to dismiss claims 16 and 20. Though the defendant disputes the court's ruling on several points, he does not explain what Hanna could have done to change that outcome.[1] *Id.* Because Hanna took all actions Robertson alleges should have been taken and because the actions were those of a reasonable attorney, this court finds that Hanna's performance was not ineffective and claims 16 and 20 are dismissed.

### K. Claim 18

Claim 18 concerns Robertson's argument that his appellate attorney, Stephen Demik, was ineffective for failing to raise various arguments that Robertson requested he address on direct appeal. Docket 23 at 30-31. Magistrate Judge Duffy recommended dismissing claim 18 because "failure to raise the issue[s] was not deficient performance" given that the issues did not appear meritorious. *See* Docket 49 at 30-32. In his objections, Robertson again argues that he asked Demik to raise various claims, but that Demik refused and "told [Robertson] to [make those arguments] on habeas." Docket 55 at 9. In his affidavit, Demik states that he "exhaustively examined the record for appeal and determined there were no non-frivolous issues outside the issues raised" on appeal. Docket 40 at 2. Demik also states that many of the arguments Roberston requested Demik raise "were habeas-type claims, not appropriate for

---

[1] To the extent that Robertson argues that the court erred in its holdings, those questions should have been litigated on direct appeal and are, thus, procedurally defaulted before this court. *See Jennings*, 696 F.3d at 762-63.

direct appeal." *Id.* Neither Robertson nor Demik clearly identify which arguments Demik counseled Robertson to reserve for habeas litigation.

"The Sixth Amendment does not require that counsel raise every colorable or non-frivolous claim on appeal." *Walker v. United States*, 810 F.3d 568, 579 (8th Cir. 2016) (quoting *New v. United States*, 652 F.3d 949, 953 (8th Cir. 2011)). When appellate counsel competently raises *some* claims on appeal, the petitioner faces a substantial burden to sustain that counsel was ineffective for failing to bring other claims. *Id.* "This is because one of appellate counsel's functions is to winnow the available arguments and exercise judgment about which are most likely to succeed on appeal." *Id.* (quoting *Gray v. Norman*, 739 F.3d 1113, 1118 (8th Cir. 2014)).

Robertson does not argue in his objections that his claims were meritorious; he merely reiterates his objection to Demik's refusal to raise the arguments. *See* Docket 55 at 9. Absent any evidence to the contrary, the court presumes that the failure to raise an argument on direct appeal was an exercise in judgment on the part of appellate counsel in "winnow[ing] the available arguments . . . [to those] most likely to succeed[.]" *Walker*, 810 F.3d at 579. Thus, Roberston has not demonstrated ineffectiveness and the court adopts Magistrate Judge Duffy's recommendation to dismiss claim 18.

**L.  Claim 21**

In claim 21, Robertson points out that his PSR stated that Renita Yellow Boy struck Robertson with a bar, despite the fact that contrary evidence was presented at trial. *See* Docket 23 at 34; *see also* Docket 55 at 10. Reading the

18

motion in the light most favorable to Robertson, the court construes the claim to allege that Demik was ineffective for failing to object to this statement in the PSR. *See* Docket 23 at 34. In her report and recommendation, Magistrate Judge Duffy recommends dismissing the claim because "[t]he information in the PSR was *more favorable* to Mr. Robertson than the trial testimony[,]" and thus could not be prejudicial. Docket 49 at 33 (emphasis in original).

The court agrees with Magistrate Judge Duffy's recommendation that Robertson has not shown ineffectiveness, nor prejudice. A reasonable attorney would not object to the inclusion of statements favorable to his client in a PSR. Nor was Robertson prejudiced by the inclusion of information favorable to him in the PSR. Claim 21 is dismissed.

### M. Claims 22 and 23

Claims 22 and 23, like claim 4, have to do with the location of the victim's exit and entry wounds. *See* Docket 23 at 35-37. In claim 22, Robertson alleges that the PSR confused the location of Quick Bear's exit and entry wounds. *Id.* at 35. He asserts that Demik was ineffective for failing to object to this identification. *Id.* Additionally, in claim 23, Robertson argues that Hanna was ineffective for failing to introduce photos of the injuries that would allegedly show which was the exit versus the entry wound. *Id.* at 37. Magistrate Judge Duffy recommended dismissal of these claims, and Robertson objected. *See* Docket 49 at 33-35; Docket 55 at 10. Robertson's objections restate factual

contentions from his original claim, but do not substantively address
Magistrate Judge Duffy's recommendation. *See* Docket 55 at 10.

As the court has already addressed in claim 4, the identification of the
entry and exit wounds does not prejudice Robertson. Thus, he has not shown
ineffective assistance of counsel regarding either Demik or Hanna. Claims 22
and 23 are dismissed.

### N. Claim 27

In response to Magistrate Judge Duffy's recommendation that claim 27
be dismissed, Robertson's objection merely states that he requests an
evidentiary hearing. Docket 55 at 11. Robertson does not explain why
Magistrate Judge Duffy's findings were erroneous or why such a hearing is
warranted. *Id.* Because the petitioner must make specific objections and may
not leave his argument to the court's speculation, the court denies Robertson's
objection and affirms Magistrate Judge Duffy's recommendation to dismiss the
claim.

### O. Certificate of Appealability

To appeal the denial of a § 2255 motion, a petitioner must first seek a
certificate of appealability from the district court. *See Miller-El v. Cockrell*, 537
U.S. 322, 335-36 (2003). The certificate may be issued "only if the applicant
has made a substantial showing of the denial of a constitutional right." 28
U.S.C. § 2253(c)(2). To meet the substantial showing requirement, "[t]he
petitioner must demonstrate that reasonable jurists would find the district
court's assessment of the constitutional claims debatable or wrong." *Slack v.*

*McDaniel*, 529 U.S. 473, 484 (2000). In other words, "[a] substantial showing is a showing that issues are debatable among reasonable jurists, a court could resolve the issues differently, or the issues deserve further proceedings." *Cox v. Norris*, 133 F.3d 565, 569 (8th Cir. 1997). Robertson has not made a substantial showing that his claims are debatable among reasonable jurists, that a court could resolve his claims differently, or that any of the issues raised in his claims deserve further proceedings. Thus, a certificate of appealability is not issued.

## CONCLUSION

As Magistrate Judge Duffy accurately discussed in her report and recommendations, Robertson's claims are either procedurally defaulted, barred by previous litigation, or lacking in merit. Thus, it is

ORDERED that the government's motion to dismiss (Docket 47) is granted. Robertson's 27 claims are dismissed with prejudice and Magistrate Judge Duffy's report and recommendation (Docket 49) is adopted in full, as supplemented by this order. It is further ordered that a certificate of appealability will not be issued.

DATED April 17, 2024.

BY THE COURT:

/s/ *Karen E. Schreier*
KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE